UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 11-md-02246-KAM

IN RE: AIR CRASH NEAR RIO GRANDE
PUERTO RICO ON DECEMBER 3, 2008

THIS DOCUMENT RELATES TO:
CASE NO. 10-cv-81551
CASE NO. 11-cv-80059
_____/

**OPINION AND ORDER**

This cause is before the Court upon Defendant Ramo, LLC's Motions to Dismiss (DE 15, case no. 10-cv-81551; DE 18, case no. 11-md-2246) and Motion of Plaintiff to Strike Arguments Raised by Ramo, LLC for the First Time in Reply (DE 65, case no. 11-md-2246.)  The Court has carefully considered the motions and is otherwise fully advised in the premises.

I.  Background

According to the First Amended Complaint filed in case number 11-cv-80059 and the Complaint filed in case number 10-cv-81551, on or about December 3, 2008, Kent W. Clapp and Tracy Turner were passengers aboard a chartered flight operated by Defendants Websta's Aviation Services ("Websta"), Ramo, LLC ("Ramo"), Warren Mosler ("Mosler") and Rainbow International Airlines, Inc. ("Rainbow").  The aircraft crashed into a mountain near Rio Grande, Puerto Rico while en route from Terrance B. Lettersome International Airport in Tortola, British V.I. to Luis Munoz Marin International Airport in San Juan, Puerto Rico. As a result of the crash, Mr. Clapp, Ms. Turner and the pilot were all killed. (First Am. Compl. ¶¶ 18-19, DE 1-1, case no. 11-cv-80059; Compl. ¶ 21, DE 1, case no. 10-cv-81551.)

The allegations against Ramo are as follows: (1) it maintained actual immediate control over Websta's assets and operations, such that Websta was a mere instrumentality of Ramo; (2) Websta, Ramo, Mosler and Rainbow were responsible for the safe and proper maintenance of the aircraft, for the safe and proper equipping of the aircraft during its flight, and for the proper training, currency and rest requirements of the flight crew; (3) Ramo and Mosler were the alter ego of Websta in that Mosler, acting through Ramo, acted as a general partner, principal or joint venturer of Websta, and maintained control over substantially all of Websta's assets, directed Websta's fiscal policy, cash flow, budgeting, expenditures, maintenance, operations, aircraft modifications, use of aircraft, manpower, scheduling and otherwise exerted control and direction over all of Websta's day to day operations; (4) Ramo, Mosler and/or Rainbow was the owner of the accident aircraft, the constructive owner of the accident aircraft, and/or exercised complete control and dominion over the operation, equipping and maintenance of the accident aircraft and (5) that the accident flight was under the operational control of Westa, Ramo, Mosler and/or Rainbow at the time of crash. (First Am. Compl. ¶¶ 12, 14-16, 18, case no. 11-cv-80059; Compl. ¶¶ 15-19, case no. 10-cv-81551.)

The Turner complaint, filed December 2, 2010, in case number in 10-cv-81551 brings counts for negligence against Websta, Ramo, Mosler and Rainbow (count one); vicarious liability against Ramo, Mosler and Rainbow for the negligence of Websta and the pilot (count two) and wrongful death and survival damages under the Montreal Convention against Websta, Ramo, Mosler and Rainbow (count three).[1]

---

[1] Turner has also filed a Complaint in case number 11-cv-20869, which was transferred to this Court from the United States District Court of the Northern District of Ohio on March 11, 2011. That case is brought against Websta and Ramo on the basis of negligence (count one),

2

The Clapp complaint in case number 11-cv-80059 brings counts for negligence against Websta, Ramo, Mosler and Rainbow (count one); vicarious liability against Ramo, Mosler and Rainbow for the negligence of Websta and the pilot (count two); fraudulent transfer per se against Websta and Ramo (count three) and fraudulent transfer by implication against Websta and Ramo (count four).

Ramo has moved to dismiss the complaints in case numbers 10-cv-81551 and 11-cv-80059. With respect to case number 11-cv-80059, Ramo contends that the claims against it are barred by the Federal Aviation Act, 49 U.S.C. § 44112 et seq. because Ramo was not in possession or control of the subject aircraft when the crash occurred. Ramo raises this same argument in case number 10-cv-81551. Furthermore, Ramo seeks dismissal of case number 11-20869 on the basis of the "substantial overlap" between the transferred Turner Ohio action and the original Turner Florida action.[2] Specifically, Ramo moves to dismiss case number 11-20869 on the basis of the first-filed rule.

---

willful and wanton misconduct (count two), wrongful death (count three); wrongful death and survival damages under the Montreal Convention (count four) and fraud (count five). (Compl., DE 1, case no. 11-cv-20869.) The United States District Court for the Northern District of Ohio granted Ramo's motion to transfer pursuant to 28 U.S.C. § 1406(a) because it found: (1) Ramo, the only defendant appearing in that action, was a Florida company which conducted no activities in Ohio and (2) no substantial part of the events or omissions giving rise to the alleged claims occurred in the Northern District of Ohio. (March 11, 2011 Order of the Northern District of Ohio, DE 15-1, case no. 11-cv-20869.)

[2] Based on this argument, it appears that Ramo should have filed the motion to dismiss in case number 11-20869. For the purposes of judicial efficiency, the Court will nonetheless address dismissal of case number 11-20869.

3

II. Discussion

A. First to File

Ramo argues that because the Ohio court "never obtained jurisdiction over Ramo," "the [f]irst-filed rule is applicable to Turner's pending cases," and "[s]ince this is the Court first having jurisdiction over the matter, this Court is tasked with applying the [f]irst[-][f]iled rule and ordering the dismissal of Turner's subsequent action." (DE 15 at 5.) The Court rejects this argument.

"Where two actions involving overlapping issues and parties are pending in two federal courts, there is a strong presumption across the federal circuits that favors the forum of the first-filed suit under the first-filed rule." See Manuel v. Convergys Corp., 430 F.3d 1132, 1135 (11th Cir. 2005); see also Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Haydu, 675 F.2d 1169, 1174 (11th Cir.1982) ("In [the] absence of compelling circumstances, the court initially seized of a controversy should be the one to decide the case."). Moreover, "the 'first-filed' rule generally requires the first court to decide whether the first-filed rule should apply." Kate Aspen, Inc. v. Fashioncraft-Excello, Inc., 370 F. Supp. 2d 1333, 1338 (N.D. Ga. 2005) citing Haydu, 675 F.2d at 1174; Supreme International Corp. v. Anheuser-Busch, Inc., 972 F. Supp. 604, 607-08 (S.D. Fla.1997). "The primary purpose of the 'first filed' rule is to conserve judicial resources and avoid conflicting rulings." DermaMed Techs. Corp. v. Passmore Labs, No. 10-00483-CG-B, 2011 WL 1753196, at * 7 (S.D. Ala. Apr. 21, 2011); see Allstate Insurance Company v. Clohessy, 9 F. Supp. 2d 1314, 1315–16 (M.D. Fla.1998).

"The first to file rule not only determines which court may decide the merits of substantially similar issues, but also establishes which court may decide whether the second suit

4

filed must be dismissed, stayed or transferred and consolidated." Tiber Laboratories, LLC v. Cypress Pharms., Inc., No. 2:07-CV-0014-RWS, 2007 WL 3216625, at * 2 (N.D. Ga. May 11, 2007) citing Cadle Co. v. Whataburger of Alice, Inc., 174 F.3d 599 (5th Cir. 1999) (internal quotation marks omitted). The second-filed court may stay the action pending the first-filed court's decision to "decide whether the case should continue in that jurisdiction or in the jurisdiction where the matter was later filed." Homeowners Loan Corp. v. North Am. Communications, Inc., No. 1:06-CV-1304-JOF, 2007 WL 496746, at * 1-2 (N.D. Ga. Feb. 12, 2007); see also Supreme International, 972 F. Supp. at 607-08 (staying the second-filed case on the ground that the first-filed court is the more appropriate court to determine whether the first-filed rule should apply).

     Based on the foregoing, Ramo's application of the "first filed" rule is misplaced. The complaint in case number 11-cv-20869 was originally filed in the Northern District of Ohio, and then transferred to the Southern District of Florida pursuant to 28 U.S.C. § 1406(a). Subsequent to the transfer, the case was assigned to the undersigned after the United States Judicial Panel on Multidistrict Litigation entered an order for coordinated or consolidated pretrial proceedings. (DE 72, case number 11-cv-20869.) Six cases, including case numbers 11-cv-20869 and 10-cv-81551, are now part of this multidistrict litigation. Consistent with the formation of this multidistrict litigation, the Court has issued a case management order to manage, among other things, pretrial matters, such as the coordination of discovery. (DE 38, 11-md-2246.) Clearly, then, case numbers 11-cv-20869 and 10-cv-81551 are not pending in two different courts. Moreover, the decision to coordinate these cases by the United States Judicial Panel on Multidistrict Litigation serves the purpose of conserving judicial resources and avoiding

conflicting rulings by different judges. Simply put, the Court finds that the existence of two Turner actions before this Court, which is overseeing the multidistrict litigation, provides no basis to dismiss either of the Turner actions. Either party, however, may raise the issue of consolidation for purposes of trial at the appropriate time.[3]

B. Federal Preemption

In moving to dismiss, Ramo contends that Plaintiffs' claims are preempted by the Federal Aviation Act, 49 U.S.C. § 44112,[4] "because Ramo was not in actual possession or control of the aircraft when it crashed." (DE 15 at 5; DE 18 at 3.)

---

[3] Notably, prior to the entry of the case management order, Ramo had moved to consolidate these two cases, which the Court denied as moot due to the entry of the case management order. (DE 75, case no. 11-cv-20869.) Ramo now objects to consolidation, claiming that consolidation would subject it to potentially inconsistent, contrary and/or conflicting rulings or judgment. Given that the cases are consolidated for pretrial purposes, the Court will defer ruling on the question of consolidation for trial.

[4] Section 44112 of Title 49 of the United States Code provides:

(a) Definitions.--In this section–

(1) "lessor" means a person leasing for at least 30 days a civil aircraft, aircraft engine, or propeller.
(2) "owner" means a person that owns a civil aircraft, aircraft engine, or propeller.
(3) "secured party" means a person having a security interest in, or security title to, a civil aircraft, aircraft engine, or propeller under a conditional sales contract, equipment trust contract, chattel or corporate mortgage, or similar instrument.

(b) Liability.--A lessor, owner, or secured party is liable for personal injury, death, or property loss or damage on land or water only when a civil aircraft, aircraft engine, or propeller is in the actual possession or control of the lessor, owner, or secured party, and the personal injury, death, or property loss or damage occurs because of--

(1) the aircraft, engine, or propeller; or
(2) the flight of, or an object falling from, the aircraft, engine, or propeller.

49 U.S.C. § 44112.

6

Rule 8(a) of the Federal Rules of Civil Procedure requires "a short and plain statement of the claims" that "will give the defendant fair notice of what the plaintiff's claim is and the ground upon which it rests." Fed. R. Civ. P. 8(a). The Supreme Court has held that "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal citations omitted).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quotations and citations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. Thus, "only a complaint that states a plausible claim for relief survives a motion to dismiss." Id. at 1950. When considering a motion to dismiss, the Court must accept all of the plaintiff's allegations as true in determining whether a plaintiff has stated a claim for which relief could be granted. Hishon v. King & Spalding, 467 U.S. 69, 73 (1984). Finally, the scope of the Court's review is limited to the four corners of the complaint. St. George v. Pinellas County, 285 F.3d 1334, 1337 (11th Cir. 2002).

Plaintiffs' complaints adequately allege control of Websta's operations by Ramo. (First Am. Compl. ¶¶ 12, 14-16, 18, case no. 11-cv-80059; Compl. ¶¶ 15-19, case no. 10-cv-81551.) Indeed, the complaints allege that the accident flight was under the operational control of Websta, Ramo, Mosler and/or Rainbow at the time of crash. Based on these allegations alone,

7

the motion to dismiss will be denied.

Nonetheless, in moving to dismiss, Ramo relies on Vreeland v. Ferrer, 28 So. 3d 906 (Fla. Dist. Ct. App. 2010) in its initial briefs. That case held that "49 U.S.C. § 44112 preempts Florida's dangerous instrumentality law insofar as that law would hold the owner or lessor of a civil aircraft liable for another's negligence committed when the owner or lessor was not in actual possession or control of the aircraft." Vreeland, 28 So. 3d at 912. However, as noted by Plaintiffs, that case was recently overturned by the Florida Supreme Court. Vreeland v. Ferrer, 71 So. 3d 70 (Fla. 2011). In so doing, the Florida Supreme Court held that Florida's dangerous instrumentality doctrine, to the extent it imposes vicarious liability upon owners and lessors of airplanes even where the plane is not within their immediate control or possession, conflicts with 49 U.S.C. § 44112 with regard to injuries or death occurring on land. The Vreeland Court also held that the plaintiff's wrongful death action was not preempted because the decedent's death occurred while he was a passenger on the domestic flight that crashed, and not on the ground beneath the plane. Id. at 84; see also Rogers v. Ray Gardner Flying Service, Inc., 435 F.2d 1389, 1393-94 (5th Cir.1970) (federal aviation law did not preempt state tort law with regard to aircraft liability on a domestic flight).[5] Therefore, the state law claims survive.

Here, there is no dispute that the decedents were passengers on the plane at the time of the crash. Thus, under Vreeland, Plaintiffs' claims would not be preempted. That stated, both parties recognize (Compl. ¶ 3, case no. 10-cv-81551; DE 61 at 15) that the Montreal Convention

---

[5] The decisions of the United States Court of Appeals for the Fifth Circuit, as that court existed on September 30, 1981, handed down by that court prior to the close of business on that date, shall be binding as precedent in the Eleventh Circuit, for this court, the district courts, and the bankruptcy courts in the circuit. Bonner v. Pritchard, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc).

for the Unification of Certain Rules for International Carriage by Air ("Montreal Convention") controls because, based on the allegations, the flight crash involved an international flight, where the countries of origin and destination are signatories to the Montreal Convention. Convention for the Unification of Certain Rules for International Carriage by Air, ICAO Doc. 9740, reprinted in Treaty Doc. No. 106–45, 1999 WL 33292734 (2000).  As such, the treaty, and not state law, provides the sole cause of action under which Plaintiffs can redress their injuries. See, e.g., El Al Israel, Ltd. v. Tsui Yuan Tseng, 525 U.S. 155 (1999) (Warsaw Convention preempts all state law causes of action arising from international flights); Eli Lily and Co. v. Air Exp. Intern. USA, Inc., 615 F.3d 1305, 1308 (11th Cir. 2010) (the Montreal Convention replaced the Warsaw Convention treaty); Paradis v. Ghana Airways Ltd., 348 F. Supp. 2d 106, 111 (S.D.N.Y. 2004) (appropriate to rely on cases interpreting the Warsaw convention where the equivalent provision of the Montreal convention is substantially the same).  Hence, Ramo's argument for preemption under the Federal Aviation Act is unavailing.

      C. Motion to Strike

Plaintiffs move to strike arguments raised by Ramo for the first time in its reply memorandum; specifically, section II of the reply memorandum which raises issues regarding the sufficiency of the Plaintiffs' pleadings as they relate to piercing the corporate veil.  A review of Ramo's initial motion reveals that the corporate veil arguments were indeed raised for the first time in the reply memorandum.  This is improper and the Court shall strike these arguments and not consider them. See Rule 7.1(c) of the Southern District of Florida ("reply memorandum shall be strictly limited to rebuttal of matters raised in the memorandum in opposition"); Tallahassee Mem. Regional Med. Ctr. v. Bowen, 815 F.2d 1435, 1446 n.16 (11th Cir.1987) ("it is well settled

that a party cannot argue an issue in its reply brief that was not preserved in its initial brief") (citing United States v. Oakley, 744 F.2d 1553, 1556 (11th Cir.1984)).

### III.  Conclusion

Accordingly, it is hereby **ORDERED AND ADJUDGED** as follows:

1)	Defendant Ramo, LLC's Motions to Dismiss (DE 15 in case no. 10-cv-81551 and DE 18 in case no. 11-md-2246) are **DENIED**.

2)	Motion of Plaintiff to Strike Arguments Raised by Ramo, LLC for the First Time in Reply (DE 65 in case no. 11-md-2246) is **GRANTED**.

**DONE AND ORDERED** in Chambers at West Palm Beach, Palm Beach County, Florida, this 7th day of March, 2012.

_____
KENNETH A. MARRA
United States District Judge